KAREN R. BAKER, Associate Justice
A Union County jury found appellant, Courtney Jerrel Douglas, guilty of first-degree murder and possession of a firearm. Douglas was sentenced to a term of life imprisonment for the murder conviction plus an additional fifteen years' imprisonment for the use of a firearm. For his possession-of-a-firearm charge, Douglas was sentenced to forty years' imprisonment and a fine of $15,000. Douglas's probation was also revoked on three controlled-substance offenses, and he was sentenced to a total of fifty years' imprisonment to be served consecutively to his other sentences. We affirmed his convictions and sentences in Douglas v. State , 2017 Ark. 70, 511 S.W.3d 852. Subsequently, Douglas filed a timely petition for postconviction relief pursuant to *687 Rule 37 of the Arkansas Rules of Criminal Procedure. The circuit court denied Douglas's petition without a hearing and Douglas now brings this appeal.[1] Our jurisdiction is pursuant to Rule 37 and Arkansas Supreme Court Rule 1-2(a)(8). We affirm in part and reverse and remand in part.
Douglas's convictions and sentences stem from an altercation between the victim, Terrance Billings, and Douglas. On August 5, 2015, Douglas and Billings got into a verbal altercation at Douglas's home. After the altercation, Billings returned to his home. After Billings had left to go home, Douglas retrieved a firearm and drove to Billings's home. Jennifer Henry, Billings's girlfriend, testified that Douglas came to their home uninvited, and when she answered the door, "[Billings] pushed [Douglas] back outside the door and turned back around. I heard the gunshot. Then [Douglas] came and finished shooting inside the house where [Billings] fell on the floor and died. [Douglas] still stood there and shot when there wasn't no more bullets in the gun ... I kept hearing the gun clicking." D.H., Jennifer's fourteen-year-old son, testified that when Douglas came to their home, he witnessed Billings and Douglas as they "tussled" on the porch. D.H. further testified that Billings was inside the home when Douglas began shooting Billings. John Henry, Jennifer's father, testified that he witnessed Douglas and Billings scuffling on the porch as well. John further testified that it looked like Billings had Douglas in a headlock and Jennifer was standing behind them. Sergeant Jim Sanders with the Union County Sheriff's Office testified that upon arriving at the crime scene, it was his duty to immediately begin taking photographs. Sergeant Sanders testified that there did not appear to be any blood, tissue, or other bodily fluids on the porch or door. However, inside the threshold, but not on the threshold itself, there appeared to be bodily fluid. Further, Sergeant Sanders testified that there was no indication that Billings's body had been moved. Chief Investigator Ricky Roberts, also with the Union County Sheriff's Office, testified that there was no indication of blood on the porch, and based on the evidence, it was apparent that Billings was shot while standing inside the house.
In his petition for postconviction relief, Douglas argued that trial counsel was ineffective in failing to present the proper jury instructions on (1) justification and (2) extreme emotional disturbance manslaughter. Douglas contended that based on these failures, he received ineffective assistance of counsel and was prejudiced. Douglas now appeals, arguing that the circuit court erred in denying relief on these claims without a hearing.
Law & Analysis
"On appeal from a trial court's ruling on a petitioner's request for Rule 37 relief, this court will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. Kemp v. State , 347 Ark. 52, 55, 60 S.W.3d 404, 406 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. Id. "
*688 Prater v. State , 2012 Ark. 164, at 8, 402 S.W.3d 68, 74. "The benchmark for judging a claim of ineffective assistance of counsel must be 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' Strickland [v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984) ]." Henington v. State , 2012 Ark. 181, at 3-4, 403 S.W.3d 55, 58. Pursuant to Strickland , we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. Williams v. State , 369 Ark. 104, 251 S.W.3d 290 (2007). A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. Springs v. State , 2012 Ark. 87, 387 S.W.3d 143. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id.
Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. Id. The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. Howard v. State , 367 Ark. 18, 238 S.W.3d 24 (2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Id. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Id. Additionally, conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. Anderson v. State , 2011 Ark. 488, 385 S.W.3d 783.
Turning to the merits, we note that the circuit court did not hold an evidentiary hearing. Rule 37.3 of the Arkansas Rules of Criminal Procedure provides that an evidentiary hearing should be held in a postconviction proceeding unless the files and record of the case conclusively show that the prisoner is entitled to no relief. Wooten v. State , 338 Ark. 691, 1 S.W.3d 8 (1999) (citing Bohanan v. State , 327 Ark. 507, 939 S.W.2d 832 (1997) (per curiam)). If the files and the record show that the petitioner is not entitled to relief, the circuit court is required to make written findings to that effect. Ark. R. Crim. P. 37.3(a).
Justification Jury Instruction
For his first point on appeal, Douglas argues that the circuit court erred in denying his claim, without a hearing, that trial counsel was ineffective in failing to present the proper jury instruction on justification. Douglas contends that due to trial counsel's failure, he was prejudiced. At trial, Douglas asserted the defense of justification. However, trial counsel proffered justification instruction AMI Crim. 2d 704, which is the jury instruction for non-deadly force. As Douglas points out, AMI Crim. 2d 704 is inapplicable in a homicide case. Douglas contends that the proper jury instruction would have been AMI Crim. 2d 705, which is the justification jury instruction for the use of deadly force. Douglas argues that there were assertions-based on his own statement and the testimony of John Henry-that Billings physically attacked Douglas first and had him in a headlock. Thus, Douglas argues that he was entitled to AMI Crim. 2d 705, the justification instruction for the use of deadly physical force. Douglas argues that had trial counsel proffered the correct jury instruction, it would have been reversible error for the circuit court to refuse it.
*689 The State responds that trial counsel was not ineffective for failing to proffer AMI Crim. 2d 705 because there was no rational basis for giving the instruction. Notwithstanding trial counsel's failure to submit AMI Crim. 2d 705, the State contends that the circuit court rejected Douglas's request for an instruction on justification, finding that there was no basis for doing so. In its June 21, 2017 order, the circuit court denied Douglas's claim as follows:
The defendant's first contention is that his trial counsel was ineffective in failing to present the proper jury instruction on justification and because of that failure the defendant was prejudiced.
The defendant accurately quotes the colloquy between the Court, Mr. Reed (Trial Counsel) and Mr. Rogers (Chief Deputy Prosecuting Attorney). It is clear from this colloquy that the Court was not of the opinion that the instruction would be given if properly drafted.
"... The instruction as presented is erroneous. It lacks necessary criteria. I submit to you and it is the position of this Court that there is not a reasonable basis to believe that Terrance Billings was about to use deadly physical force on this defendant because there is no evidence of such deadly physical force because the defendant is the one who provoked this incident by going to the residence of Terrence Billings and he is the only one that went to the residence or arrived at that residence with a firearm. I think it is unreasonable to believe that he can provoke this incident and then raise the defense of justification." (Emphasis added[.] )
This colloquy and all other discussion about the jury instructions were held outside the presence of the jury.
As the State accurately points out, the proof in this case is undisputed. The victim had a verbal confrontation with the defendant at the defendant's house. The victim left the defendant's house and traveled to his, the victim's own house. As the State urges, it is important to note the initial confrontation between the victim and the defendant had fully concluded. There was no further threat to the defendant. Throughout the initial confrontation there is no mention or concern of either the victim or the defendant being armed with a firearm.
After the victim left the defendant's house and went to his own house the undisputed proof was that the victim was relaxing on his sofa. His girlfriend was in the house with the victim, and her young son was outside standing in the yard.
The defendant, not satisfied with the way the initial confrontation concluded, retrieved a handgun he had kept in a dresser drawer at his house and traveled to the victim's house. The defendant walked onto the victim's front porch and called out the victim. The victim, who was unarmed and entitled to defend himself, tried to push the defendant away from the front door. The defendant then pulled out his firearm and shot the victim multiple times while the victim was standing in his front doorway.
A person may not use deadly physical force in self-defense if he knows that he can avoid the necessity of using that force with complete safety by retreating. Additionally, this defense is not applicable when one arms himself and goes to a place in anticipation that the other will attack him. Kemp v. State, 348 Ark. 750, 74 S.W.3d 224 (2002).
Like Kemp, there is no rational basis for giving the jury instruction for self-defense even if it correctly followed the language of the law. Thus, failing to offer such an instruction is not evidence of ineffective assistance of counsel.
*690 Counsel is not ineffective for failing to make a motion or argument that is without merit. Flemons v. State, 2016 Ark. 460, 505 S.W.3d 196.
Other than being convicted, the defendant has failed to show how he has been prejudiced. The revocations are NOT (emphasis added) pendent upon the conviction in 70CR-15-324. The burden of proof is a mere preponderance of the evidence.
Based on Strickland , Douglas must demonstrate that trial counsel's failure to proffer AMI Crim. 2d 705 amounted to a deficient performance that fell below an objective standard of reasonableness that so prejudiced Douglas as to deprive him of a fair trial. In Sims v. State , we explained that "[t]o show prejudice under Strickland based on trial counsel's failure to request a specific instruction, the United States Supreme Court has held that an appellant must establish that it was 'reasonably likely that the instruction would have made any difference [in the outcome of the trial] in light of all the other evidence of guilt.' Berghuis v. Thompkins , 560 U.S. 370, 390, 130 S.Ct. 2250, 176 L.Ed. 2d 1098 (2010)." 2015 Ark. 363, at 10, 472 S.W.3d 107, 115. Further, there must be a rational basis in the evidence to warrant the giving of an instruction. Allen v. State , 326 Ark. 541, 932 S.W.2d 764 (1996). A party is entitled to an instruction on a defense if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. Yocum v. State , 325 Ark. 180, 925 S.W.2d 385 (1996).
A person may not use deadly physical force in self-defense if he knows that he can avoid the necessity of using that force with complete safety by retreating. See Ark. Code Ann. § 5-2-607(b)(1). Additionally, this defense is not applicable when one arms himself and goes to a place in anticipation that another will attack him. Girtman v. State , 285 Ark. 13, 684 S.W.2d 806 (1985). One who claims self-defense must show not only that the person killed was the aggressor, but also that the accused used all reasonable means within his power and consistent with his safety to avoid the killing. Ricketts v. State , 292 Ark. 256, 729 S.W.2d 400 (1987) (citing Martin v. State , 290 Ark. 293, 718 S.W.2d 938 (1986) ).
Here, as found by the circuit court, despite trial counsel's failure to proffer AMI Crim. 2d 705, there was no rational basis for giving this instruction. The record demonstrates that Douglas and Billings got into a dispute at Douglas's home. After the argument, Billings returned to his home. After the initial confrontation had fully concluded, Douglas retrieved a handgun and traveled to Billings's home with the firearm. As noted above, Arkansas Code Annotated section 5-2-607(b)(1) prohibits one from using deadly physical force in self-defense if he knows he can avoid the necessity of using deadly force with complete safety by retreating. Although Billings might have been the initial aggressor, the record is clear that the initial dispute had fully concluded, with Billings leaving the scene and returning to his home. However, Douglas, with a firearm in tow, initiated the second encounter at Billings's home. Further, Billings attempted to flee from Douglas by running back into the house. Accordingly, Douglas could not rationally argue that the use of deadly force was necessary to protect himself. In light of all the other evidence of Douglas's guilt, pursuant to Sims , Douglas has failed to establish that it was reasonably likely that the AMI Crim. 2d 705 instruction would have made any difference in the outcome of his trial. Thus, because Douglas has failed to prove either Strickland prong, he has failed to establish a claim for ineffectiveness of counsel on this point. In sum, we hold that the circuit *691 court's decision was not clearly erroneous, and we affirm.
Extreme-Emotional-Disturbance-Manslaughter Jury Instruction
For his second point on appeal, Douglas argues that the circuit court erred in denying his claim, without a hearing, that trial counsel was ineffective in failing to present the proper jury instruction on extreme-emotional-disturbance manslaughter. Douglas contends that due to trial counsel's failure, he was prejudiced. However, prior to delving into the merits of his argument, Douglas asserts that the circuit court failed to comply with the dictates of Rule 37 of the Arkansas Rules of the Criminal Procedure. We agree.
Pursuant to Arkansas Rule of Criminal Procedure 37.3(a), the circuit court has the discretion to decide whether the files and records are sufficient to sustain the court's findings without a hearing. Rule 37.3(a) states that "[i]f the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief, the trial court shall make written findings to that effect, specifying any parts of the files, or records that are relied upon to sustain the court's findings." (Emphasis added.) This court has previously interpreted Rule 37.3 to provide that an evidentiary hearing should be held in a postconviction proceeding unless the files and record of the case conclusively show that the prisoner is entitled to no relief. Sanders v. State , 352 Ark. 16, 98 S.W.3d 35 (2003). When the trial court concludes, without a hearing, that the petitioner is not entitled to relief, Rule 37.3(a) requires the trial court to make written findings specifying the parts of the record that form the basis for the trial court's decision. Id. This court has, on occasion, affirmed the denial of a Rule 37 petition notwithstanding the circuit court's failure to make written findings under Rule 37.3(a), but we have done so only in two circumstances: (1) where it can be determined from the record that the petition is wholly without merit, or (2) where the allegations in the petition are such that it is conclusive on the face of the petition that no relief is warranted. Reed v. State , 375 Ark. 277, 280, 289 S.W.3d 921, 923 (2008).
Here, as to Douglas's argument regarding the jury instruction on extreme-emotional-disturbance manslaughter, the circuit court entered the following one-sentence finding: "The Court adopts in 'toto' the argument of the State in its response in Topics No. 5 and No. 6." This finding does not comport with Rule 37.3(a). We cannot reach the merits of a postconviction claim for relief absent the circuit court's written findings of fact because, on review, we determine whether the findings are supported by a preponderance of evidence. Id. Likewise, we cannot say that Douglas's argument as to the jury instruction on extreme-emotional-disturbance manslaughter is so conclusive on the face of the petition or on the face of the record as to show that no relief is warranted. Further, it is not incumbent on this court to scour the record in a Rule 37 appeal to determine if the petition is wholly without merit when there are no written findings. Id. That is the circuit court's function if no hearing is held. Id.
Based on the foregoing, because the circuit court failed to make written findings in accordance with Rule 37.3(a), we reverse and remand the case to the circuit court for written findings in compliance with Rule 37.3(a). It may well be that the circuit court will want to hold a hearing on Douglas's petition pursuant to Rule 37.3(c), following which the circuit court must make findings of fact and conclusions of law. Id. If the circuit court does not conduct a *692 hearing and instead dismisses Douglas's petition, the court shall make written findings for this court to review under Rule 37.3(a). Id. In either instance, the circuit court shall enter findings with respect to Douglas's extreme-emotional-disturbance-manslaughter jury instruction claim.
Affirmed in part; reversed in part and remanded.
Kemp, C.J., and Hart, J., concur in part and dissent in part.
Josephine Linker Hart, Justice, concurring in part and dissenting I part.
I agree with the majority that it is necessary to remand this case for additional findings. Rule 37.3(a) provides that "[i]f the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief, the trial court shall make written findings to that effect, specifying any parts of the files, or records that are relied upon to sustain the court's findings." "[A]n evidentiary hearing should be held in a postconviction proceeding unless the files and record of the case conclusively show that the prisoner is entitled to no relief." Mancia v. State , 2015 Ark. 115, 3, 459 S.W.3d 259, 263. Here, the circuit court's order denied Douglas's petition without a hearing and without making any findings with respect to Douglas's second argument. As such, the order appealed from is not final, and remanding for additional findings is appropriate. Brown v. State , 2015 Ark. 435, 474 S.W.3d 498 ; Echols v. State , 344 Ark. 513, 42 S.W.3d 467 ; Coleman v. State , 338 Ark. 545, 998 S.W.2d 748 (1999).
Because this court is remanding this case for additional findings relating to Douglas's second argument, it lacks jurisdiction to address or rule on Douglas's first argument regarding the Justification (Deadly Force) instruction. Addressing this argument encourages the very same piecemeal appeals that our finality jurisprudence proscribes. See , e.g. , Gray v. White River Health System, Inc. , 2016 Ark. 73, 483 S.W.3d 293 (54(b) order that lacked findings explaining why hardship or injustice would result if immediate appeal was not permitted was not final, and Supreme Court accordingly lacked jurisdiction); K.W. v. State , 327 Ark. 205, 207, 937 S.W.2d 658, 659 (1997) ("The purpose of the finality requirement is to avoid piecemeal litigation."); Hyatt v. City of Bentonville , 275 Ark. 210, 211, 628 S.W.2d 326, 327 (1982) (appellate courts have a "duty" to address whether lower court's orders are sufficiently final "in order to avoid piecemeal litigation").
I would remand this case to the circuit court for additional findings, and decline to address any of the arguments presented at this juncture; this court lacks jurisdiction to do anything more.
Kemp, C.J., joins.

On June 27, 2017, the Union County Circuit Clerk prepared separate records for the probation revocation, 70CR-11-661, and the homicide case, 70CR-15-324. On June 29, 2017, the records were lodged in this court. The probation revocation appeal was assigned case number CR-17-546 and the homicide case was assigned case number CR-17-547. Douglas filed a motion to consolidate the two cases. On November 9, 2017, we granted Douglas's motion to consolidate, closing case number CR-17-547 and noting that all further proceedings will be identified and filed in CR-17-546.