Cite as 2019 Ark. 289

# SUPREME COURT OF ARKANSAS
No. CR-18-172

| | |
|---|---|
| FRED L. WILLIAMS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered October 24, 2019<br><br>PRO SE APPEAL FROM THE DREW COUNTY CIRCUIT COURT; MOTION FOR DEFAULT JUDGMENT AND FOR EXPEDIENT REVIEW OF APPEAL AND RELIEF OF CUSTODY; AMENDMENT TO DEFAULT JUDGMENT MOTION AND MOTION FOR EXPEDIENT REVIEW, DOUBLE JEOPARDY HELD; MOTION FOR SUBMISSION OF APPELLANT'S BELATED REPLY BRIEF [NO. 22CR-13-43]<br><br>HONORABLE SAM POPE, JUDGE<br><br><u>AFFIRMED; MOTIONS MOOT</u>. |

**JOHN DAN KEMP, Chief Justice**

Appellant Fred L. Williams brings this pro se appeal from the denial by the trial court of his claims for postconviction relief that were raised pursuant to Rule 37.1 (2016) of the Arkansas Rules of Criminal Procedure. Also pending before this court are Williams's motion for default judgment, for expedient review of appeal and relief of custody; "amendment to default judgment motion and motion for expedient review, double jeopardy held"; and his motion for submission of a belated reply brief. Because Williams raised claims that are not cognizable in Rule 37.1 proceedings and also failed to establish prejudice as a basis to support his multiple ineffective-assistance-of-counsel claims, we affirm the trial court's order, which renders Williams's motions moot.

Williams was found guilty of murder in the first degree and abuse of a corpse for which an aggregate sentence of life imprisonment was imposed. Williams was sentenced as a habitual offender. We affirmed the conviction and the sentence. *Williams v. State*, 2015 Ark. 316, 468 S.W.3d 776.

Williams subsequently filed a timely petition for Rule 37.1 relief, contending that his right to due process was violated as a result of juror misconduct, prosecutorial misconduct, and an illegal search. Williams also raised multiple ineffective-assistance-of-counsel claims. Two hearings were held on Williams's Rule 37.1 petition. The trial court denied relief on the basis that Williams had failed to provide sufficient supporting evidence to establish he had been prejudiced under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for a determination of effective assistance of counsel.

In this appeal, we consider only those claims that were raised in Williams's Rule 37.1 petition and ruled on by the trial court. *Gordon v. State*, 2018 Ark. 73, 539 S.W.3d 586; *State v. Grisby*, 370 Ark. 66, 257 S.W.3d 104 (2007). Those claims are in two categories—trial error and allegations that trial counsel was ineffective. The claims of trial error are (1) that the evidence presented at trial was the result of an illegal search and seizure; (2) that juror misconduct occurred at the trial; and (3) that the prosecutor made improper comments to the jury. The claims of ineffective assistance of counsel are (1) that trial counsel failed to investigate the affidavit supporting the search warrant; (2) that trial counsel failed to thoroughly investigate the AT&T phone records; (3) that trial counsel failed to rebut the testimony of the medical examiner, Dr. Adam Craig; (4) that trial counsel failed to object to the prosecutor's conduct; and (5) that trial counsel failed to preserve or raise issues on appeal.

2

## I. *Trial-Error Claims*

Rule 37 was not intended to provide a method for the review of mere error in the conduct of the trial or to serve as a substitute for a direct appeal of the judgment. *Lane v. State*, 2019 Ark. 5, 564 S.W.3d 524; *Hulsey v. State*, 268 Ark. 312, 595 S.W.2d 934 (1980). Claims of an illegal search, juror misconduct, and prosecutorial misconduct cannot be raised in a Rule 37 proceeding. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006); *Cigainero v. State*, 321 Ark. 533, 906 S.W.2d 282 (1995). Therefore, the only cognizable claims are the ineffective-assistance-of-counsel claims that Williams raised below and reasserted on appeal.

## II. Strickland *Standard*

Our standard for ineffective-assistance-of-counsel claims is the two-prong analysis set forth in *Strickland*, 466 U.S. 668. *McClinton v. State*, 2018 Ark. 116, 542 S.W.3d 859. The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 3–4, 542 S.W.3d at 862 (quoting *Strickland*, 466 U.S. at 686). To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Id.* Unless a petitioner makes both showings, the allegations do not meet the benchmark on review for granting relief on a claim of ineffective assistance. *Id.* A court need not address both components of the inquiry if the petitioner makes an insufficient showing on one. *Carter v. State*, 2015 Ark. 166, 460 S.W.3d 781. In

3

order to demonstrate prejudice, the petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Douglas v. State*, 2018 Ark. 89, 540 S.W.3d 685. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. *Id.*

### III. *Standard of Review*

This court reviews the trial court's decision on a Rule 37.1 petition for clear error. *Russell v. State*, 2017 Ark. 174, 518 S.W.3d 674. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the totality of the evidence, is left with the definite and firm conviction that a mistake has been committed. *Polivka v. State*, 2010 Ark. 152, 362 S.W.3d 918. When considering an appeal from a trial court's denial of a Rule 37.1 petition based on ineffective assistance of counsel, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the United States Supreme Court in *Strickland*, the trial court clearly erred in holding that counsel's performance was not ineffective. *Carter*, 2015 Ark. 166, 460 S.W.3d 781.

### IV. *Evidence Adduced at Trial*

Before addressing the allegations of ineffective assistance of counsel, it is necessary to recite the evidence adduced at Williams's trial based on a review of the direct-appeal record.[1]

---

[1]This court may take judicial notice in postconviction proceedings of the record on direct appeal without need to supplement the record. *Lukach v. State*, 2018 Ark. 208, 548 S.W.3d 810.

4

On the morning of April 5, 2013, Williams's girlfriend, Tangela Walton, was observed by a witness, Varetta Butcher, engaged in a heated conversation on her cell phone with an unidentified person. Later that day, Walton was reported missing by family members, and police questioned Williams, who denied any knowledge of Walton's whereabouts. However, Williams subsequently admitted to investigators that he knew where Walton's body was buried. In his final statement to investigators, Williams explained that Walton had called him on the morning of April 5 to ask if he would like to have sex. He agreed, picked her up, and the two went to Williams's home where they engaged in what Williams described as "freaky" sex that included tying Walton up and placing a plastic bag over her head. Williams stated that the two were engaging in sex when he had a seizure and "fell out" on Walton, accidently suffocating her. Williams admitted that when he was unable to revive her, he panicked and carried Walton to a wooded area outside his home and buried her. Williams led investigators to the site where Walton was buried.

## V. *Ineffective-Assistance-of-Counsel Claims*

In his first ineffective-assistance-of-counsel claim preserved for review, Williams argues that trial counsel erroneously failed to investigate alleged flaws in the affidavit for the search warrant. Specifically, Williams asserts that investigators had misrepresented and embellished statements that Butcher had given to them in the affidavit for the search warrant. Williams alleges that this error by counsel was prejudicial because the evidence obtained as a result of the search would have been suppressed had trial counsel performed a more thorough investigation. Because nothing seized from the search was introduced into evidence at the

5

trial, Williams has failed to demonstrate prejudice arising from trial counsel's failure to investigate the search-warrant affidavit.[2] *McClinton*, 2018 Ark. 116, 542 S.W.3d 859.

For his second claim of attorney error, Williams asserts that trial counsel failed to thoroughly investigate the AT&T phone records that had been introduced into evidence in conjunction with Butcher's testimony. Williams contends that the AT&T phone records revealed that Walton had spoken to other individuals on the day that she died. The trial record shows that Butcher testified that the argument she had overheard lasted for at least fifteen minutes, and the AT&T records show that the only lengthy call documented by AT&T during that time frame took place between Walton and Williams. Again, there is no demonstration that drawing the jurors' attention to the additional calls noted in the AT&T records would have given rise to a reasonable probability that the outcome of the trial would have been different. *Douglas*, 2018 Ark. 89, 540 S.W.3d 685. Whether Walton spoke with or even argued with another individual on the day that she died is not material in view of Williams's admission that he caused Walton's death and then buried her.

Williams's third claim of ineffective assistance of counsel involves the testimony of the medical examiner, Dr. Adam Craig. Williams contends that trial counsel failed to thoroughly investigate Dr. Craig's conclusions that Walton had a number of healing injuries at the time of her death. However, the trial record reveals that Dr. Craig testified that he had discovered and noted the presence of old injuries as well as new injuries during the course of the autopsy. Williams also argues that investigators misled Dr. Craig when they informed him that

---

[2]Williams asserts that his DNA profile was obtained from materials seized in the "illegal" search. However, the trial record contains a forensic report that Williams's DNA was obtained from an oral swab.

Williams admitted that he and Walton were engaging in rough sex when Walton died. Williams insists that this description of "rough" sex instead of "freaky" sex was the basis for Dr. Craig's conclusion that Walton's death was a homicide. Williams fails to establish a material difference between "rough" and "kinky"—the terms used to characterize his sexual activities with Walton. Dr. Craig testified that his conclusion was based primarily on the number of fresh injuries sustained by Walton at the time of her death. Williams's claims regarding Dr. Craig's opinion and testimony do not demonstrate that counsel's representation was deficient. *McClinton*, 2018 Ark. 116, 542 S.W.3d 859.

For his fourth claim, Williams contends that trial counsel failed to object to the prosecutor's improper comments made during opening statement and closing argument. At the first hearing on his petition, Williams described the prosecutor's comments that Williams alleged were improper. Specifically, Williams contends that the prosecutor improperly told the jury that Walton's cell phone had been destroyed; that the prosecutor misstated the distance in feet between the site of Walton's grave and Williams's home; that the prosecutor implied that Williams's DNA was found under Walton's fingernail; that the prosecutor compared his sexual experiences with Williams's sexual experiences; that Williams was the only person to speak to Walton on the day Walton died; and that the prosecutor told the jury that Williams was a liar.

The rule governing closing arguments mandates that such arguments must be confined to issues raised and evidence introduced during the trial and all reasonable inferences and deductions that can be drawn therefrom. *Stewart v. State*, 2012 Ark. 444. There is no error when comments made during closing arguments are inferable from testimony at trial. *Id.*

7

Furthermore, counsel are permitted to express their opinions to a jury so long as they do not purposely arouse passion and prejudice. *Jefferson v. State*, 372 Ark. 307, 276 S.W.3d 214 (2008). Because counsel may choose to refrain from objecting during opening statement and closing argument as a matter of trial strategy, absent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006). Finally, closing remarks that require reversal are rare and require an appeal to the jurors' passions. *Rohrbach v. State*, 374 Ark. 271, 287 S.W.3d 590 (2008). There is nothing in the trial record to indicate that the prosecutor's comments during opening statement and closing argument were unreasonable, egregious, and appealed to the jurors' passions. Williams did not establish that his trial counsel was ineffective when he chose not to raise meritless objections during the prosecutor's opening statement and closing argument. *Howard*, 367 Ark. 18, 238 S.W.3d 24.

In his final point, Williams alleges that trial counsel failed to preserve or raise issues on appeal. Williams does not describe the errors his attorney allegedly made during the appellate process, and such conclusory allegations are not a basis for postconviction relief. *Douglas*, 2018 Ark. 89, 540 S.W.3d 685.

Despite Williams's claims of errors by the trial court, the prosecutor, and defense counsel, the trial record clearly demonstrates that the jury did not believe Williams's account that Walton was unintentionally asphyxiated. The trial court did not clearly err when it found that Williams had failed to demonstrate that he suffered any prejudice as a result of his counsel's alleged errors.

Affirmed; motions moot.

*Fred L. Williams*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by:  *Kent Holt*, Ass't Att'y Gen., for appellee.