Cite as 2022 Ark. 124

# SUPREME COURT OF ARKANSAS
No. CR-21-425

| | |
|---|---|
| QATONIOUS SIRKANEO A/K/A WALTER ALLEN BROOKS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** June 2, 2022<br><br>PRO SE APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT; MOTION TO FILE BELATED REPLY BRIEF<br>[NO. 62CR-10-302]<br><br>HONORABLE RALPH WILSON, JR., JUDGE<br><br>AFFIRMED: MOTION MOOT. |

**ROBIN F. WYNNE, Associate Justice**

Qa'Tonious Lee Sirkaneo, also known as Walter Allen Brooks, appeals from the trial court's denial of his petition for postconviction relief filed pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2020). Sirkaneo also filed motions for a hearing and appointment of counsel. The trial court denied Sirkaneo's motions and denied the Rule 37.1 petition without a hearing. On appeal, Sirkaneo contends that the trial court erred when it denied his motions; reasserts some, but not all, claims raised below; and raises new claims for the first time on appeal. On January 10, 2022, Sirkaneo filed in this court a motion to file a belated reply brief that was due on December 22, 2021. Because Sirkaneo fails to demonstrate entitlement to Rule 37.1 relief, we affirm the trial court's denial of the petition. Sirkaneo's motion to file a belated reply brief is therefore moot.

I. *Background*

Sirkaneo was charged with capital murder in the death of Anna Mae Banks and the attempted capital murder of Nathaniel Banks. After a jury trial, he was convicted of the lesser-included offenses of first-degree murder and attempted first-degree murder and was sentenced to consecutive terms of eighty and fifty years' imprisonment, respectively. The Arkansas Court of Appeals reversed and remanded for a new trial, holding that the trial court erred when it refused a request from the defense to submit the issue of accomplice liability to the jury. *Brooks v. State*, 2014 Ark. App. 84.

In his second jury trial, Sirkaneo represented himself but was appointed standby counsel. The jury convicted him of first-degree murder and attempted first-degree murder with a firearm enhancement. Sirkaneo was sentenced as a habitual offender to life imprisonment for first-degree murder, thirty years' imprisonment for attempted first-degree murder, and fifteen years' imprisonment on the firearm enhancement, all to run consecutively. On direct appeal, Sirkaneo was represented by the attorney who acted as standby counsel during the trial. The sole issue raised on appeal concerned the trial court's failure to declare a mistrial after a witness commented on Sirkaneo's right to remain silent. The convictions and sentences were affirmed. *Sirkaneo v. State*, 2019 Ark. 308, 586 S.W.3d 606.

Because Sirkaneo alleges that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal, a review of the direct-appeal trial

2

record is necessary.[1] The evidence adduced at trial demonstrated that at the time of the crime, Sirkaneo was in a relationship with Tammy Bernard, who lived in Widener, Arkansas. Bernard was a close neighbor of the two victims and lived with her sister, Marika Tiggs-Robinson, in a trailer that was located two houses down from the Bankses' residence.

Nathaniel Britt, the victims' son, had been Bernard's previous boyfriend and had dated her for four years before she began dating Sirkaneo. Britt remained friends with Tiggs-Robinson and continued to visit the residence of the two sisters. Britt testified that he had attempted to visit Tiggs-Robinson the day before his mother's death and had spoken with Sirkaneo. According to Britt, the exchange with Sirkaneo was uncomfortable to such an extent that Britt called Bernard the following morning and complained about Sirkaneo's behavior toward him. Britt's comments led to an argument with Bernard, and she called Sirkaneo and told Sirkaneo about the argument and related Britt's criticism of him. Sometime after speaking with Bernard, Sirkaneo called Britt and asked if he was at home, and Britt replied that he was on his way to pick up supplies for work and would not be home for another several hours. Sirkaneo told Britt that he would be there when Britt got off work.

Britt's father, Nathaniel Banks, testified that he and his wife, Anna Mae Banks, lived in Widener and that they returned to their house in their red van that morning after going

---

[1]This court may take judicial notice in postconviction proceedings of the record on direct appeal without need to supplement the record. *Williams v. State*, 2019 Ark. 289, 586 S.W.3d 148.

3

to town for hog feed.  Mr. Banks stated that as he and Anna Mae unloaded the bags of feed from their van, Anna Mae was shot and fell to the ground. Mr. Banks turned around and found a man standing there who put a pistol in his face and pulled the trigger twice, but the gun misfired.  The assailant then took off, turned around, pointed the gun at Mr. Banks, and pulled the trigger a third time, but it again misfired.  Anna Mae was killed instantly.  Mr. Banks called 911 but was unable to identify the shooter other than to say he was wearing a "do-rag" and sunglasses. A passerby who had witnessed the incident approached Mr. Banks as he was talking to the 911 dispatcher and described both the automobile and the direction the vehicle was traveling as it fled the scene. Mr. Banks further testified that he discovered a shell casing in the van the following day, and he called police who came and retrieved it.

Tiggs-Robinson testified that she was at home the morning of the crime. During that time, she received multiple calls from Sirkaneo that she ignored, but when she saw him run across her yard and jump into a car parked in her driveway, she answered the phone whereupon Sirkaneo asked her if the police were outside. Tiggs-Robinson testified that Sirkaneo's question about police prompted her to leave her home where she discovered that her neighbor, Anna Mae, had been shot.

The description provided in the 911 call of the vehicle and the direction it was traveling led to an investigation that quickly resulted in the apprehension of Sirkaneo and three other men in a vehicle traveling from Widener toward Hughes, Arkansas. The occupants of the vehicle were Earl Smith, the driver; Robert Brooks, Sirkaneo's brother; and Kipp Doolittle.

4

Smith and Doolittle testified at trial that Sirkaneo had paid them to take him to Widener. Smith testified that he understood the purpose of the trip was to allow Sirkaneo to pick up some clothes from Bernard's house. Smith stated that when they arrived in Widener, Sirkaneo directed them to park in front of Bernard and Tiggs-Robinson's home. Smith stated that Sirkaneo exited the car, made a call, and then returned to the vehicle and asked Smith to wait a couple of hours before returning home, but Smith refused to wait that long. According to Smith, Sirkaneo then stated that he would settle the matter with the "momma and daddy" and proceeded to clean bullets. Shortly after Sirkaneo was seen heading toward the Bankses' residence, Smith heard a gunshot. Upon his return, Sirkaneo told Smith, "I just execute style the momma and tried to kill his daddy, but the gun jam, I guess this was his lucky day." Smith testified that while he was driving away from Widener, Sirkaneo threw his sunglasses out of the window. Smith further testified that when his vehicle was being stopped by police, Sirkaneo attempted to persuade the other passengers in the car to take possession of his gun, and when no one would take the gun, Sirkaneo hid it under the passenger seat. The gun and several bullets were seized from the car. Furthermore, the sunglasses were found with the assistance of Smith. A firearms expert testified that the cartridge recovered by Mr. Banks from inside the van matched the gun found in Smith's car. All witnesses testified that the gun seen in Sirkaneo's possession looked like the gun recovered from Smith's car and introduced as evidence at trial. Doolittle testified and described the same events that Smith had described, including Sirkaneo's admission that he

had shot the momma and tried to kill the daddy. In addition to the gun and bullets, gloves and a head covering were recovered from Smith's vehicle.

## II. *Standard of Review*

We will not reverse the trial court's ruling on a petition for postconviction relief under Rule 37.1 unless it is clearly erroneous. *Wesley v. State*, 2019 Ark. 270, 585 S.W.3d 156. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*

## III. Strickland *Standard*

Our standard for ineffective-assistance-of-counsel claims is the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Reynolds v. State*, 2020 Ark. 174, 599 S.W.3d 120. Under the *Strickland* standard, to prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Id.* Unless a petitioner makes both showings, the allegations do not meet the benchmark on review for granting relief on a claim of ineffective assistance. *Id.* To demonstrate prejudice, the petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

## IV. *Claims for Relief*

Sirkaneo raised the following claims in the petition filed in the trial court that are reasserted on appeal: (1) that he was not allowed to confront his accuser in violation of the Confrontation Clause; (2) that appellate counsel was ineffective by failing to challenge the sufficiency of the evidence supporting his conviction; (3) that pretrial counsel was ineffective by failing to investigate the DNA found on the clothing seized from Sirkaneo and the other passengers in Smith's car; (4) that he was subject to an unlawful arrest, which invalidates the evidence seized from the vehicle and the statements obtained from the passengers, Smith and Doolittle; and (5) that the prosecutor made inappropriate comments during closing involving the connection of the murder weapon to Sirkaneo.

Sirkaneo has raised numerous claims on appeal that were not raised below and are therefore waived.[2] We will not consider arguments that are raised for the first time on appeal, including constitutional arguments. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. Furthermore, arguments made to the trial court but not included in arguments on appeal

---

[2]The grounds raised for the first time on appeal are as follows: (1) trial counsel failed to challenge Sirkaneo's waiver of counsel as voluntarily and intelligently made; (2) the trial court failed to conduct a competency hearing; (3) appellate counsel failed to raise the Confrontation Clause issue on appeal; (4) appellate counsel failed to raise issues on appeal regarding prosecutorial misconduct during closing argument where the prosecutor commented on Sirkaneo's silence, asked the jury to disregard DNA evidence, and told the jury that it was obligated to protect the community against career criminals; (5) appellate counsel failed to challenge on direct appeal the lack of a suppression hearing; (6) standby counsel was ineffective by failing to challenge the lack of evidence supporting the verdict, by failing to produce mitigation evidence, by failing to investigate two material witnesses, by failing to investigate the criminal history of Nathaniel Banks and Nathaniel Britt, by failing to investigate alternative suspects, and by failing to investigate Sirkaneo's diminished capacity.

are considered abandoned. *Drennan v. State*, 2021 Ark. 206, 632 S.W.3d 753. Sirkaneo has abandoned his claims that (1) trial counsel failed to object to the admission of certain evidence, (2) trial counsel failed to file a motion to suppress, and (3) the court held a "disposition hearing" outside Sirkaneo's presence.

## A.  Confrontation Clause

Sirkaneo claims a violation of the Confrontation Clause in that the State failed to produce his "accuser." Sirkaneo asserts that an officer was told at the crime scene by an unidentified witness that Sirkaneo was the assailant and that this witness statement formed the basis for Sirkaneo's arrest.  Sirkaneo claims that the State's failure to produce this witness denied him a fundamental right to cross-examine his accuser in violation of the Sixth Amendment of the United States Constitution. Sirkaneo is mistaken.

The Confrontation Clause applies to "witnesses" who provide testimony against the accused, with testimony typically being "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v. Washington*, 541 U.S. 36, 51, (2004); *see also Coakley v. State*, 2021 Ark. 207, 633 S.W.3d 328.  Sirkaneo fails to provide sufficient facts to establish a violation of the Confrontation Clause.  The record demonstrates that the State did not attempt to admit the out-of-court statement of this unknown declarant as proof of Sirkaneo's guilt, and any reference to the statement that Sirkaneo was the shooter was elicited by Sirkaneo during cross-examination. There are insufficient facts alleged establishing that the statement was subject to the Confrontation Clause. In any event, Sirkaneo's allegation is a claim of trial error that could have been raised

at trial or on direct appeal. Rule 37 is not available to raise questions of trial error, even questions of constitutional dimension. *Lane v. State*, 2019 Ark. 5, 564 S.W.3d 524.

## B. Ineffective Assistance of Appellate Counsel

Sirkaneo raised multiple claims of ineffective assistance of his appellate counsel that were raised for the first time on appeal and are waived. The only remaining claim of ineffective assistance of appellate counsel pertains to the allegation that counsel failed to challenge the sufficiency of the evidence on direct appeal, even though Sirkaneo properly moved for a directed verdict. This court has consistently held that appellate counsel is not ineffective for not pursuing on appeal an argument that is without merit. *Camargo v. State*, 346 Ark. 118, 55 S.W.3d 255 (2001). An argument challenging the sufficiency of the evidence supporting Sirkaneo's conviction would have failed.

In reviewing a challenge to the sufficiency of the evidence, the evidence is viewed in the light most favorable to the State, and only the evidence that supports the verdict is considered. *Collins v. State*, 2021 Ark. 35, 617 S.W.3d 701. A conviction is affirmed if substantial evidence supports it. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.* The substantial evidence supporting Sirkaneo's conviction is as follows: Sirkaneo traveled to Widener the day of the crime with three others, and Sirkaneo was the only passenger in the vehicle that had any connection to the two victims; Sirkaneo was seen cleaning bullets before walking toward the Bankses' residence; Sirkaneo was placed at the Bankses' residence at the time a shot was heard by both Smith and Doolittle; Sirkaneo

was seen running away from the crime scene by his girlfriend's sister, Tiggs-Robinson; Sirkaneo telephoned Tiggs-Robinson as he fled the scene and asked if police were in the area; Sirkaneo admitted to Smith and Doolittle that he committed the crimes; and Sirkaneo possessed the murder weapon that, according to Smith and Doolittle, Sirkaneo attempted to hide when police intercepted Smith's vehicle. Viewing the evidence in the light most favorable to the State, any challenge to the sufficiency of the evidence supporting the conviction would have been without merit.

## C. Ineffective Assistance of Pretrial Counsel

Sirkaneo alleges that his "pre-trial" counsel[3] was ineffective by failing to investigate the unknown DNA found on clothing recovered from Sirkaneo and other passengers when Smith's car was intercepted and its occupants arrested. The DNA supervisor for the state crime lab testified that the head covering and gloves recovered from Smith's vehicle had multiple DNA contributors and that the findings were therefore inconclusive. The DNA supervisor noted that a dominant DNA component was found on the head covering that did not match Sirkaneo or any of the other passengers in the car, while the minor DNA component was inconclusive. Finally, Sirkaneo's DNA was found on the pants he was wearing at the time of his arrest.

---

[3]In the petition filed below, Sirkaneo alleged that his trial counsel was ineffective. This claim was rejected by the trial court on the basis that a defendant who elects to represent himself cannot later complain that the quality of his own defense amounted to a denial of effective assistance of counsel. *See Pierce v. State*, 362 Ark. 491, 209 S.W.3d 364 (2005). On appeal, Sirkaneo has limited the claim to an alleged failure on the part of counsel at the pretrial stage of his criminal trial.

Sirkaneo fails to explain how the failure to investigate the DNA recovered from clothing seized from Smith's vehicle on the day the crimes were committed could have been prejudicial. There is no evidence that another individual was near the Bankses' residence when the crimes were committed, and there is no evidence that another individual was in Smith's car on the day that police pulled it over shortly after the crimes had occurred. Furthermore, the evidence connecting Sirkaneo to the crimes and to the weapon used in the crimes was such that an identification of an unknown contributor to DNA found on the head covering would not have changed the trial's outcome. Under the *Strickland* standard, to prevail on a claim of ineffective assistance of counsel, the petitioner must show that trial counsel's performance was deficient and that prejudice resulted from that deficient performance. *Reynolds*, 2020 Ark. 174, 599 S.W.3d 120. Unless a petitioner makes both showings, the allegations do not meet the benchmark on review for granting relief on a claim of ineffective assistance. *Id*.

## D. Unlawful Arrest

Sirkaneo claims that the police made an illegal pretextual arrest when Smith's car was stopped and Sirkaneo, his brother Robert, Smith, and Doolittle were taken into custody. According to Sirkaneo, as a result of the unlawful arrest, the evidence seized and the statements of Smith and Doolittle should have been excluded at trial. Claims of an illegal arrest do not concern fundamental error because an invalid arrest does not entitle a defendant to be discharged from responsibility for the offense and are not cognizable in Rule 37.1 proceedings. *Lee v. State*, 2017 Ark. 337, 532 S.W.3d 43. An illegal arrest, without more,

11

has never been viewed as an absolute argument against a valid conviction. *Biggers v. State*, 317 Ark. 414, 878 S.W.2d 717 (1994) (citing *United States v. Crews*, 445 U.S. 463 (1980)).

## E. Prosecutorial Misconduct

Sirkaneo alleged that the prosecutor improperly argued in closing that the murder weapon was connected to the gun found in Sirkaneo's possession. The record demonstrates that the firearms expert testified that the spent cartridge casing that Mr. Banks found in the van was connected to the gun recovered from Smith's vehicle. In any event, a claim of alleged prosecutorial misconduct should have been raised at trial or on direct appeal and may not be raised for the first time in a Rule 37 petition. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006).

## F. Motion for a Hearing and Appointment of Counsel

Sirkaneo alleges that the trial court erred when it denied his requests for a hearing on his petition and for the appointment of counsel. When a Rule 37 petition is denied without a hearing, the trial court is required to make written findings setting out the bases that sustain the court's findings. *Rayburn v. State*, 2021 Ark. 98, 622 S.W.3d 155. Here, the trial court set forth its specific findings and the bases for those findings. The trial court did not err by denying the petition without a hearing.

With respect to Sirkaneo's allegation that the trial court erred by denying his request for appointed counsel, there is no constitutional right to appointment of counsel to prepare a petition under Rule 37. *Id.* The appointment of counsel in postconviction proceedings is discretionary with the trial court. *Lane*, 2019 Ark. 5, 564 S.W.3d 524. The abuse-of-

discretion standard is a high threshold that not only requires error in the court's decision but also requires that the court act improvidently, thoughtlessly, or without due consideration. *Id.* To demonstrate an abuse of discretion by the trial court in declining to appoint counsel, a petitioner must have made a substantial showing that his petition included a meritorious claim and that he could not proceed without counsel. *Id.* For the reasons set forth above, Sirkaneo failed to make that showing.

Affirmed; motion moot.

WEBB, J., dissents.

**BARBARA W. WEBB, Justice, dissenting**. I dissent. The State has conceded error in this case--the circuit court clearly erred in finding that Sirkaneo represented himself on appeal and that claims of ineffective appellate counsel are not cognizable in Rule 37 proceedings. Sirkaneo was represented by counsel on direct appeal. *See Sirkaneo v. State*, 2019 Ark. 308, at 17, 586 S.W.3d 606, 607, and claims of ineffective assistance of appellate counsel are cognizable in Rule 37 proceedings. *Taylor v. State*, 2015 Ark. 339, at 5-6. 470 S.W.3d 271, 275-76. Both of these findings were clearly erroneous. This court should have reversed and remanded this case to the circuit court for further proceedings.

In deciding to relieve the circuit court of its duty to properly rule on Mr. Sirkaneo's Rule 37 petition, the majority has failed to acknowledge that Mr. Sirkaneo's Rule 37 claims were disposed of *without a hearing*. When no hearing is held on a Rule 37.1 petition, the trial court has an obligation to provide written findings that conclusively show that the petitioner is entitled to no relief. *Sandoval-Vega v. State*, 2011 Ark. 393, 384 S.W.3d 508; *see also* Ark.

R. Crim. P. 37.3. Obviously, the circuit court's clearly erroneous findings did not show that Mr. Sirkaneo was entitled to no relief.

Finally, I cannot agree that the majority's conclusion––that Mr. Sirkaneo's sufficiency-of-the-evidence argument is "wholly without merit"––satisfies due process and his Sixth Amendment right to counsel. The majority, of course, disposed of this issue without adversary briefing. In the seminal case of *Anders v. California*, 386 U.S. 738 (1967), the Supreme Court held that to comport with the Constitution, to excuse adversary briefing the issues needed to be "wholly frivolous," not merely "wholly without merit." I cannot agree that a brief recitation of the facts, without even reference to the directed-verdict motion required to preserve a sufficiency-of-the-evidence argument, upholds Mr. Sirkaneo's constitutional rights.

I respectfully dissent.

*Qa'Tonious Lee Sirkaneo*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.