BART F. VIRDEN, Judge
Appellant George Dewayne Guthrie was convicted by a Craighead County jury of residential burglary and theft of property. He was sentenced as a habitual offender to thirty years' imprisonment in the Arkansas Department of Correction. Guthrie's convictions were affirmed on appeal to this court. Guthrie v. State , 2017 Ark. App. 681, 2017 WL 6375816. Guthrie then filed a petition pursuant to Ark. R. Crim. P. 37.1 seeking postconviction relief due to ineffective assistance of counsel. Following a hearing, the Craighead County Circuit Court denied Guthrie's petition. He now brings this timely appeal from the denial of his petition for postconviction relief. We affirm.
I. Procedural History
In his Rule 37 petition, Guthrie alleged that his trial counsel was ineffective because, among other things, counsel did not question or strike venireperson Garland *462 Pearson when counsel was advised by Guthrie that Pearson's uncle had brought criminal charges against Guthrie. Guthrie further alleged that Pearson had lied under oath when he said that he did not know Guthrie because he (Guthrie) had been married to Pearson's first cousin, Laurie. Guthrie further alleged that Pearson became jury foreman, which put him in a position to influence and manipulate the other jurors.
The trial court held a hearing on Guthrie's petition. Pearson testified that he had been adopted when he was four years old and that he had grown up in Lake City, the site of Guthrie's trial. He said that he had moved to Memphis, Tennessee, when he was seventeen years old and had lived there until his father became sick about eight years ago. Pearson testified that he was not close to any of his family "whatsoever." He stated that his uncle, Garland Platts, had died three or four years ago. He said that he had visited Platts in hospice while he was unconscious and dying but that, before that, he had not had any contact with Platts for thirty to thirty-five years. Pearson said that he was unaware that Platts had been the victim of any crime. Pearson said that he knew of Platts's children, including Laurie, but did not know any of them personally or where they were currently living. He said that he had not had any contact with Laurie for "probably thirty years." Pearson testified that he has a half sister, Bobbie Ann, but that he did not have much contact with her and was not aware of any relationship she may have had with Guthrie.
Pearson further testified that he did not recall ever having seen Guthrie except for when he served on the jury at Guthrie's trial. He testified that, when he was asked during voir dire if he knew any of the parties at Guthrie's trial, he had truthfully answered no. Pearson also stated that he had become foreman of the jury simply because he had sat at the end of the table. He said, "I sat there and [the other jurors were] like you're the jury foreman. I didn't know what it meant."
Bill Howard, an attorney, testified that he had represented Guthrie when he was tried in Lake City. Howard was asked whether Guthrie had told him during voir dire that he was related to or knew Pearson, and Howard responded:
That's a tough question. Not before voir dire was conducted did that issue come up. At some point either after the trial or maybe while the jury was out, I don't remember, at some point, it was after the jury was selected that something was brought up. I can't even tell you what he said, somebody knows somebody and didn't like my cousin or my brother or something like that.
Howard recalled telling Guthrie that, because Guthrie knew some of the jurors and he (Howard) did not, it was Guthrie's call whether to strike a potential juror. Howard further testified that, if he had known something unfavorable about a juror, he would have brought that up.
Guthrie testified that he had advised Howard that Pearson's uncle, Garland Platts, had brought criminal charges against him in 1993 or 1994. Guthrie said that Platts was his former father-in-law, as Guthrie had been married to Platts's daughter, Laurie, who is Pearson's first cousin. Guthrie said that he had known Pearson's family "literally all of [his] life" and that he had been to Pearson's house when his mother drove the school bus. Guthrie said that he had also been in a "sexting" relationship with Pearson's sister, Bobbie Ann. He said that Bobbie Ann had once referred to the fact that Platts did not like him.
Guthrie also testified that, as jury foreman, Pearson was in a position to sway or *463 steer the jury in a certain direction "like possibly at sentencing" and that Pearson could have had something to do with the ultimate outcome. The trial court questioned Guthrie about what he had told Howard when Pearson denied knowing him, and Guthrie said that he had told Howard that Pearson was not telling the truth when he said that he did not know him because he had been married to Pearson's cousin. Guthrie recalled that Howard had written "married to cousin" in his notes.
On cross-examination, Guthrie said that, of the venirepersons he knew, Pearson and Ms. Hafer were the only ones who did not get excused and that some of the venirepersons had been excused due to familial ties. Guthrie testified that Laurie and Bobbie Ann could have "vouched" for his relationship with Pearson but that he had not known that he needed to subpoena them to testify. He said that he also did not reach out to any of the other jurors, including Ms. Hafer, to ask whether Pearson had indeed attempted to sway the jury against him. Guthrie conceded that he had no proof that Pearson had influenced the jury to convict him or give him a longer sentence.
In denying Guthrie's petition as it relates to juror Pearson, the trial court made the following findings of fact:
15. That the Defendant alleged that Garland Pearson had knowledge of the Defendant and his family. That the Defendant further alleged that Garland Pearson was the nephew of one of the Defendant's victims and Mr. Pearson was prejudiced against him as a result.
16. That Attorney Howard testified that the Defendant first made mention of his acquaintance with Garland Pearson after the jury was selected.
17. That the Court provided the Defendant time during voir dire to consult with his attorney regarding potential jurors prior to their selection.
18. That Garland Pearson describes his family as "dysfunctional" and did not know the Defendant prior to being chosen as a juror.
19. That Garland Pearson was chosen as the jury foreperson merely by virtue of sitting at the end of the table during deliberations.
20. That the Court found both Garland Pearson and Attorney Howard to be credible in their testimony.
The trial court concluded that Guthrie had failed to overcome the presumption that Pearson was unbiased and qualified to serve.
II. Standard of Review
We do not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous. Mercouri v. State , 2018 Ark. App. 74, 540 S.W.3d 328. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. Id.
The appellate courts assess the effectiveness of counsel under the two-prong standard set forth by the United States Supreme Court in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Shipman v. State , 2010 Ark. 499, 2010 WL 5185781 (per curiam). Under the Strickland test, a petitioner raising a claim of ineffective assistance must first show that trial counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. Id. A petitioner must show that trial counsel's performance fell below an objective standard of reasonableness.
*464 Miller v. State , 2011 Ark. 114, 2011 WL 913206 (per curiam). In addition, in order to meet the second prong of the test, the petitioner must show that trial counsel's deficient performance prejudiced the defense so that the petitioner was deprived of a fair trial. Winston v. State , 2011 Ark. 264, 2011 WL 2412899 (per curiam). A petitioner must show that there is a reasonable probability that the fact-finder's decision would have been different absent trial counsel's errors. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Id.
Unless appellant makes both Strickland showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Mercouri, supra. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and a petitioner has the burden of overcoming this presumption by identifying specific acts or omissions of trial counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. Kelley v. State , 2011 Ark. 175, 2011 WL 1522527 (per curiam).
III. Discussion
Guthrie cites Ark. Code Ann. § 16-33-304, which provides that "[a] challenge for implied bias may be taken in the case of the juror being related by consanguinity, or affinity, ... or who is a member of the family of the defendant...." Ark. Code Ann. § 16-33-304(b)(2)(B)(i) (Repl. 1999). Guthrie argues that Howard admitted knowing about the familial relationship, yet he did not raise the issue of possible bias at any time. According to Guthrie, this was ineffective assistance of counsel because it eliminated the opportunity to investigate juror bias, move for a mistrial, and preserve the issue for appeal of his conviction and sentence.
Jurors are presumed unbiased and qualified to serve. Howard v. State , 367 Ark. 18, 238 S.W.3d 24 (2006). To prevail on an allegation of ineffective assistance of counsel with regard to jury selection, a petitioner first has the heavy burden of overcoming the presumption that jurors are unbiased. Id. To accomplish this, a petitioner must demonstrate actual bias, and the actual bias must have been sufficient to prejudice the petitioner to the degree that he was denied a fair trial. Id. Bare allegations of prejudice by counsel's conduct during voir dire that are unsupported by any showing of actual prejudice do not establish ineffective assistance of counsel. Id. The mere fact that a juror may have been acquainted with the victim's friends or family does not give rise to a presumption of bias. Isom v. State , 284 Ark. 426, 682 S.W.2d 755 (1985).
Guthrie did not cite section 16-33-304 before the trial court-either in his petition or during argument. Arguments raised for the first time on appeal could not have been considered by the trial court and will not be addressed by the appellate courts. Pollard v. State , 2014 Ark. 226, 2014 WL 2019296 (per curiam). Nevertheless, in Frazier v. State , 2016 Ark. 55, 482 S.W.3d 305, our supreme court, looking at Ark. Code Ann. § 16-31-102(b)(1), a similar statute, stated that, even when a prospective juror is related to a party in the pending case, the prospective juror can still serve by consent of the parties. The supreme court further stated, "Thus, under no circumstance are parties compelled by law to exclude certain jurors because of their status." Id. at 6, 482 S.W.3d 305. Here, the trial court pointed out that Guthrie and Howard had conferred with each other prior to the final selection of *465 jurors. Moreover, Howard, whom the trial court found credible, stated that he had told Guthrie that he (Guthrie) would make the final call on which jurors would be on his jury because he knew many of them. Guthrie testified that some venirepersons were not selected as jurors because of family ties, but Pearson remained on the jury. This was evidence from which the trial court could have concluded that Pearson served on the jury with Guthrie's consent.
In any event, Pearson testified that he is estranged from his family and had not had any contact with either Laurie or his uncle for decades. Under these circumstances, Guthrie cannot show actual bias. Moreover, Howard testified that Guthrie was not clear about his connection to Pearson through Laurie or Pearson's uncle and that the matter was not brought to his attention until after the jury had been selected. Guthrie did not show that trial counsel's performance was deficient such that it fell below an objective standard of reasonableness; therefore, we cannot say that the trial court clearly erred in denying postconviction relief. Because Guthrie has not met the first prong of the Strickland test, we need not address the second prong concerning prejudice. Accordingly, we affirm the trial court's denial of Guthrie's petition for postconviction relief.
Affirmed.
Abramson and Hixson, JJ., agree.