Cite as 2025 Ark. App. 363

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR-24-118

| | |
|---|---|
| JAMES ANDREW TAYLOR<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** June 4, 2025<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT<br>[NO. 46CR-21-13]<br><br>HONORABLE CARLTON D. JONES, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

James Andrew Taylor appeals the denial of his Rule 37 petition to vacate his conviction. A Miller County jury convicted him in October 2021 of constructively possessing a firearm that officers from Arkansas Community Correction found in a closet at his residence after serving him with an arrest warrant in a new criminal case. Because Taylor had prior felony convictions (including felon-in-possession convictions), he could not lawfully possess it. The circuit court imposed the jury's recommended sentence of thirty years in the Arkansas Division of Correction.

Most of Taylor's pro se brief is a conspiratorial and testimonial attempt to relitigate the sufficiency of evidence to convict. You can't do that through Rule 37. *Ortega v. State*, 2017 Ark. 365, 533 S.W.3d 68. Enough said. But the circuit court concluded that a few points raised in the petition merited exploration. It appointed counsel in June 2023, held

an evidentiary hearing that September, and found that Taylor did not prove he was entitled to relief. We affirm.

We will not reverse a circuit court's decision to grant or deny postconviction relief unless it is clearly erroneous. *Walden v. State*, 2016 Ark. 306, 498 S.W.3d 725. A finding is clearly erroneous, though there may be evidence to support it, if after reviewing all the evidence we have a firm and definite conviction that it is mistaken. *Id.*

Most of the relevant facts were in evidence at Taylor's trial. We set them out more fully in *Taylor v. State*, 2022 Ark. App. 464, 655 S.W.3d 330, where we affirmed the jury's verdict on direct appeal. Briefly, in January 2021 Taylor was on parole, living in a dilapidated house near the farm where he worked. He had executed a warrantless search waiver upon release from prison. Agents from the Special Response Team for Arkansas Community Correction arrived on January 4 to serve an arrest warrant. Taylor was arrested without incident.

At first, the SRT officers conducted only a cursory search incident to arrest. Officer Adam Wilson started to drive away with Taylor for booking. But on the way, he learned from Miller County Sheriff's Department Investigator Cody Hensley that a victim in the new case described a firearm Taylor had used. Investigator Hensley asked Officer Wilson to return to the house to look for it. He did. He found a short-barreled .22 magnum rifle concealed beneath clothes inside a closet of the room where Taylor had been staying, along with ammunition of various calibers (including .22 magnum) in the drawers.

Taylor's girlfriend Brandi Johnson was also at the house that day. Johnson testified that she had planted the rifle without Taylor's knowledge at the direction of Nevada County

2

Sheriff's Deputy Steve Otwell. Deputy Otwell had helped her get out of some trouble in Nevada County and had been soliciting sexual acts from her since. The defense's trial theory was that Otwell had Johnson frame Taylor so she would be free to perform those acts.[1]

Now we get into the rest of the story, which was introduced in the Rule 37 hearing in September 2023. At trial, the State called Michael Cheatham, who worked with Taylor at the Varner farm. Shorty Barrett, the defense lawyer, said Taylor "was adamant" that Cheatham would say he saw Johnson get a gun from a Chevy Suburban parked near the house after his arrest and take it inside before they returned for the search. Instead, Cheatham testified on direct examination that he did not see anyone remove anything from the Suburban.

Pushing forward with Taylor's "planted gun" theory, Barrett recalled that he showed Cheatham the gun in evidence and asked if he had seen Taylor with it. He recalled that Cheatham said no, but he had seen Taylor with a gun he uses to hunt hogs on the farm. Already, Cheatham's testimony had not gone as Taylor told Barrett to expect, and "it had sure enough gone south with the answer to that question," he said. He cut the examination short.

Taylor contended that Barrett should have impeached Cheatham's testimony by eliciting that Cheatham stood to become Varner's farm supervisor in Taylor's place if he was incarcerated. But in Barrett's view, and the circuit court's, without knowing what else Cheatham might say, he was observing the First Rule of Holes: if you're in one, stop digging. And we agree. Counsel is, in any event, afforded "great leeway" in making

---

[1]Or freer, at least. Johnson was married besides.

strategic and tactical decisions about what to ask in cross-examination, which is "a largely subjective issue about which seasoned advocates could disagree." *Nichols v. State*, 2017 Ark. 129, at 8, 517 S.W.3d 404, 410.

Recall that the SRT officers who found the gun were there to arrest Taylor for a new charge. Counsel and witnesses were careful to avoid details about that case at trial, which the court had excluded in limine. The Rule 37 proceedings revealed that it involved a rape allegation by a minor victim. The remaining issues Taylor raised in his petition relate, one way or another, to the existence of that case.

Originally, both the rape case and this firearm case were set for trial the same day, October 18. On October 21, the State filed an amended information in the firearm case adding a habitual-offender enhancement, which raised the possible sentence for the Class B felony from zero to twenty years to five to forty years. Ark. Code Ann. §§ 5-4-401(a)(3) (Repl. 2024), 5-73-103 (Repl. 2024). Chief Deputy Prosecutor Connie Mitchell offered to let Taylor plead guilty to an amended information without the enhancement in exchange for a three-year sentence. Barrett testified that he got the offer on October 22 and relayed it to Taylor during an October 23 visit at the Miller County jail. Taylor refused it, claiming innocence.

In the petition, Taylor alleged that Barrett did not tell him about the offer until the morning of trial. Taylor had confirmed on the record before trial began October 28 that "last week [he was] made an offer" by the State; that Barrett had relayed that three-year offer; and that Taylor had declined it.

4

He testified otherwise at the Rule 37 hearing. To rebut Taylor's testimony, the State played clips from an October 27 jailhouse video call with Johnson. In the video, Taylor and Johnson agree he is a gambler. But Taylor continues, "I'm not going to lie right now. If she"—Chief Deputy Prosecutor Mitchell—"come up with that three years right now I'd take it . . . but she can't now." The State paused the video.

Taylor fumbled toward an excuse that he might have been talking about the rape charge. The State unpaused the video. Taylor blusters to Johnson, "if I got to take the stand, I am going to mention that she offered me three years already with an enhancement to habitual." That enhancement was filed in the firearm case. The examination concluded:

> PROSECUTOR: Okay. So you're acknowledging now that I offered you . . . three years? And you're also acknowledging that you knew about the enhancement to the habitual offender status on the criminal information. Would you agree with that?
>
> TAYLOR: If that's, if that's, yeah, I just said that, sure did.

The circuit court concluded from the testimony, and the "additional and compelling" evidence from the video call, that Taylor's allegation that Barrett had not communicated the plea offer was simply unfounded. We agree.

Finally, Taylor raises an issue about jury selection. He alleges that his counsel was ineffective by not moving to strike Juror Bradshaw, who became the jury foreperson, from the jury panel. His concern is that she worked at the Child Advocacy Center in Texarkana where the alleged victim in the rape case had a forensic interview. Further, she acknowledged knowing Deputy Hensley, who testified at the trial that he learned there should be a gun in Taylor's house from a forensic interviewer and had told Officer Wilson to go back and look for it. And according to Taylor, Juror Bradshaw was not the only CAC

5

employee who showed up for his trial; he said Johnson had shown him photos from the internet identifying some spectators in the gallery as people who worked there.

Barrett explained his decision to allow Juror Bradshaw to be seated. When this case went to trial, Barrett was also representing Taylor in the rape case. He testified that Juror Bradshaw's name did not appear anywhere in the discovery for that case—consistent with her statement in voir dire that her job at the CAC was providing community education as the director of education and outreach. Barrett testified that "an inordinate number" of potential jurors had affiliations with Jeffery Sams, one of four prosecuting attorneys present. Barrett used a lot of peremptory strikes on them. By the time Juror Bradshaw's name was pulled, he had used seven of eight strikes. Ark. Code Ann. § 16-33-305(b) (Repl. 1999). He couldn't be sure who would be drawn next if he used the last one on her. Barrett and his jury consultant, retired Miller County attorney Clyde Lee, determined from her answers that "she was a juror that we would prefer over some others."

And Taylor offered no proof that her service on the jury *actually* prejudiced him in any way. No juror, including Juror Bradshaw, testified at the hearing. Taylor confirmed that Juror Bradshaw had not raised her hand when the circuit court asked the jury pool if anyone knew him by sight or name. And after she acknowledged having worked with Deputy Hensley, she promised she would nonetheless be fair and objective, give Taylor his presumption of innocence, and base her verdict solely on the testimony and evidence in the case.

Jurors are presumed to be unbiased. *Mercouri v. State*, 2018 Ark. App. 74, 540 S.W.3d 328. To demonstrate prejudice for an ineffective-assistance-of-counsel claim regarding jury

6

selection, a petitioner has the heavy burden of overcoming that presumption. *Id.* That requires the petitioner to "demonstrate actual bias . . . sufficient to prejudice the petitioner to the degree that he was denied a fair trial." *Guthrie v. State*, 2019 Ark. App. 203, at 7, 575 S.W.3d 460, 464. And he "must do more than allege prejudice; he . . . must actually demonstrate it." *Jones v. State*, 374 Ark. 475, 479, 288 S.W.3d 633, 637 (2008).

Taylor has not done that. As for the CAC employees he said attended the trial, none of them (if they existed) testified either. Taylor did not offer their names. And Barrett testified that he did not recall seeing anyone he recognized from the CAC at trial.

The circuit court made no findings as to whether any CAC employees observed the trial or not. But if some did, the record hints at a more likely and innocent explanation for their presence than the conspiracy Taylor imagines. The circuit court originally set Taylor's rape trial and firearm trial to begin October 18, with the State to choose which one to try:

> COURT: All right. Then in cases Number 46CR-2021-12 and 2021-13 will be set for trial October 18. What will happen, Mr. Taylor, is the State can elect to go forward on one of these cases, okay?
>
> TAYLOR: Yes, sir.
>
> COURT: And then by operation of law, we cannot then try the second one before the same jury panel.

We don't have a record of any proceedings on October 18; it appears both cases were reset for the trial October 28. The parties picked the jury in this case October 25. Afterward, the State asked the court not to swear in the jurors until the morning of trial—perhaps to preserve their eligibility to serve in the rape case if, for example, Taylor decided to change his plea in this one. The circuit court continued the trial in the rape case on the record just before Taylor's trial in this case began.

7

The State issued subpoenas in this case October 18 and 22.  Because the victim in the rape case underwent a forensic interview at CAC, we would expect some CAC employees to have been subpoenaed to testify at that trial.  If the State issued trial subpoenas in both cases (as would have been prudent with the speedy-trial clock ticking), CAC employees might have arrived at the courtroom expecting to testify, only to find the State was trying a different case.

That requires speculation on multiple points where the record is silent.  But it required less speculation, on this record, than Taylor's theory.  And he had the burden of proof.  His failure of proof compels our affirmance.

Affirmed.

WOOD and BROWN, JJ., agree.

*James A. Taylor*, pro se appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.

8